IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 5:17-cr-00113-16

JONATHAN VINCENT MOORE

### MEMORANDUM OPINION AND ORDER

Pending before the court are defendant's motions for compassionate release.  (ECF Nos. 675, 678.)  Defendant requests compassionate release in light of the COVID-19 pandemic.  The government filed a response in opposition.  (ECF No. 679.)  For the following reasons, the court **DENIES** defendant's motions for compassionate release.

**I.  Background**

Defendant is 36 years old.  He claims that he suffers from hypertension, obesity, and was a chronic smoker.  (See ECF No. 678.)  He claims he has a body mass index ("BMI") of 40, which the CDC categorizes as "severe" obesity. *Defining Adult Overweight and Obesity*, Ctrs. For Disease Control & Prevention (updated June 30, 2020), https://www.cdc.gov/obesity/adult/defining.html.  He has not attached medical records to either of his motions.

On March 12, 2018, defendant pled guilty to possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 841(a)(1).  (See ECF No. 481.)  On July 11, 2018,

this court sentenced defendant to 97 months of incarceration. (ECF No. 429.) As of August 2020, defendant has served 37 months - only 38% of his sentence. (ECF No. 679.)

Defendant is currently incarcerated at FCI Elkton in Lisbon, Ohio. FCI Elkton has been the scene of one of the largest COVID-19 outbreaks in federal prisons, as 981 inmates at FCI Elkton have tested positive for COVID-19 and 9 inmates have died from COVID-19. See *COVID-19 Cases*, Federal Bureau of Prisons (updated August 11, 2020), https://www.bop.gov/coronavirus/. The Bureau of Prisons ("BOP") website currently lists FCI Elkton as having ten current COVID-19 cases – eight cases among inmates and two among staff. See id.

On May 1, 2020, defendant petitioned the Warden at FCI Elkton for compassionate release due to COVID-19. (See ECF No. 678.) The Warden denied defendant's request that same day. (ECF No. 678, Ex. 1.) Given these circumstances showing that 30 days have passed since defendant submitted his request to the Warden in May, the United States does not contend that the defendant is barred from petitioning the court for compassionate release. (See ECF No. 679.)

II. **Analysis**

The First Step Act empowers criminal defendants to request that courts grant them compassionate release pursuant to 18

2

U.S.C. § 3582(c). However, Congress has restricted the power of courts to modify a term of imprisonment once it has been imposed except when "extraordinary and compelling reasons warrant such a reduction" and when "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." Id. § 3582(c)(1)(A). Thus, to warrant compassionate release, defendant must show that: (1) extraordinary and compelling reasons warrant a sentence reduction; (2) he is not a danger to the safety of others or the community; and (3) the reduction satisfies the sentencing factors in 18 U.S.C. § 3553(a). See id.; see also USSG §§1B1.13(1)(A),(2). All three factors must be present.

### A. Extraordinary and Compelling Reasons

Other district courts, in considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility. United States v. Brady, 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (citing and gathering cases). Thus, compassionate release motions amid the COVID-19 pandemic require a "fact-intensive" inquiry. See United States v. Shakur, 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020).

Defendant is 36 years old, and thus his age does not place him at risk for serious complications from COVID-19. Defendant states, however, that he suffers from hypertension, severe obesity, and was a chronic smoker. According to the CDC, persons with obesity have an "increased risk of severe illness from COVID-19." See *Coronavirus Disease 2019 (COVID-19), People with Certain Medical Conditions*, Ctrs. For Disease Control & Prevention (updated July 30, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Persons with hypertension and people who smoke "might be at an increased risk for severe illness from COVID-19." Id.

The court has not been provided any supporting medical records as to defendant's conditions. The court therefore cannot fully evaluate the seriousness of the asserted conditions and their impact on the particularized danger COVID-19 poses to defendant. However, the court will at this point assume without finding that defendant – due to his obesity as well as due to his hypertension and history of smoking - is at a higher risk of health problems resulting from COVID-19. Furthermore, FCI Elkton has been a hotspot for COVID-19 cases: 981 inmates at FCI Elkton have tested positive for COVID-19 and 9 inmates have died from COVID-19. See *COVID-19 Cases*, Federal Bureau of Prisons (updated August 11, 2020),

https://www.bop.gov/coronavirus/; see also United States v. Ali-Cauthen, 2020 WL 4470639, at *1 (D. Md. Aug. 4, 2020) ("FCI-Elkton has been one of the BOP facilities hardest hit by COVID-19"); The government here admits that "FCI Elkton has had a large number of confirmed positive COVID-19 cases among inmates." (ECF No. 679.) Although the number of COVID-19 cases at FCI Elkton have fortunately diminished considerably – currently eight inmates and two staff members are positive according to the BOP – defendant can still show a particularized risk of contracting COVID-19 due to his incarceration at FCI Elkton. United States v. Kibble, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (Faber, J.) ("defendant can show a particularized risk of contracting the disease [at] FCI Elkton"). Assuming the medical validity of defendant's claimed conditions, defendant has a particularized risk of contracting COVID-19, and the court therefore assumes without finding that there are "extraordinary and compelling reasons" present, within the meaning of 18 U.S.C. § 3582(c)(1)(A), to support a reduced sentence or early release.

**B. Safety to the Community**

Although the court at this point assumes that there are "extraordinary and compelling reasons" present, defendant cannot demonstrate that he is not a danger to the safety of the community. Defendant is currently serving a sentence for

5

participating in a large-scale drug trafficking organization that was distributing large quantities of controlled substances within the Southern District of West Virginia. Defendant admitted to possessing with the intent to distribute over 1,500 grams of cocaine and to possessing over $90,000 in cash that represented proceeds of drug trafficking activity. At the time of his arrest, and during the execution of a search warrant, defendant also possessed eight firearms, at least one of which had previously been stolen. For these reasons, the court finds that defendant is a danger to the safety of others or the community, and for this reason **DENIES** defendant's request for compassionate release pursuant to 18 U.S.C § 3582(c).

### C. 18 U.S.C. § 3553(a) Sentencing Factors

Additionally, the sentencing factors under 18 U.S.C. § 3553(a) also do not weigh in favor of reducing defendant's sentence. These factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii)

"the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Defendant's crimes were indisputably serious: as previously explained, he participated in a large-scale drug trafficking organization where he possessed with the intent to distribute over 1,500 grams of cocaine, and while in this line of business he possessed eight firearms, at least one of which had previously been stolen. Moreover, defendant has also served less than 50% of his sentence. See United States v. Arthur Williams, 2020 WL 3086049, at *1 (D. Mass. June 10, 2020) (denying in part because defendant had served less than half of his sentence); United States v. Oropeza Lopez, 2020 WL 1923194, at *2 (E.D. Cal. Apr. 21, 2020) ("Defendant has served less than half of his sentence [which] ... would not appear to "reflect the seriousness of the offense" or "provide just punishment for the offense."); United States v. Edington, 2020 WL 2744140, at *5 (D. Colo. May 27, 2020) (concluding that, even if the court were to find the defendant was not a danger to the community, a "sentence of less than half the court originally imposed is [not] sufficient to further the goals of sentencing"). Early release would not be consistent with the severity of defendant's

7

offense and the interest in providing just punishment for that serious offense. Therefore, this court finds that granting defendant's motions for compassionate release would be inconsistent with the sentencing factors set forth in § 3553(a).

**D. Home Confinement and Appointment of Counsel**

To the extent that defendant asks that this court order the BOP to place him on home confinement for the remainder of his sentence, (see ECF No. 678), the court hereby **DENIES** that request. This court has no authority to direct BOP to place a defendant in home confinement, and declines to advise that he be placed in home confinement. Rather, such designation decisions are committed solely to BOP's discretion. Once a sentence is imposed, BOP is solely responsible for determining an inmate's place of incarceration. See 18 U.S.C. § 3621(b); see also United States v. Patterson, 2019 WL 127962, at *2 (E.D. Va. Jan. 8, 2019) (holding that a district court may only issue a non-binding, strictly advisory recommendation regarding placement without running afoul of the limitations on modifying sentences set out in 18 U.S.C. § 3582 and Fed. R. Crim. P. 35).

To the extent that defendant requests appointment of counsel in this matter related to his request for compassionate release, (see ECF No. 678), that motion is **DENIED as moot.**

### III. Conclusion

Because the court finds that defendant's early release would endanger the safety of the community and would be inconsistent with the sentencing goals set forth in 18 U.S.C. § 3553(a), the court concludes that release under 18 U.S.C. § 3582(c)(1)(A) is not warranted. Defendant's motions for compassionate release, (ECF Nos. 675 and 678), are hereby **DENIED**.

The Clerk is directed to send a copy of this Order to counsel of record, any unrepresented parties, the Warden at FCI Elkton in Lisbon, Ohio, and the Probation Office of this court.

It is SO ORDERED this 17th day of August, 2020.

ENTER:

David A. Faber
Senior United States District Judge