```
              IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                         AT BLUEFIELD
```

UNITED STATES OF AMERICA

v.  CRIMINAL ACTION NO. 5:17-00113-16

JONATHAN VINCENT MOORE

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendant's motions (1) for compassionate release, (2) for appointment of counsel, and (3) motion for reconsideration. (ECF Nos. 699, 705, 706.) As to his first motion, defendant requests compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) because of his alleged particularized risk of contracting a severe case of COVID-19 due to his underlying health conditions together with what he perceives as the Bureau of Prisons' inability to protect federal inmates against COVID-19 infections.[1] (ECF No. 699, at 4.) As to his second motion, defendant represents that his lack of legal training renders him unable to file a reply brief to the government's opposition to his motion for compassionate release and asks that counsel be appointed for this purpose. As to his third motion, defendant asks the court to reconsider its previous order denying defendant's two previous motions for

---

[1] Defendant also alleged that, when he filed his motion, he was infected with COVID-19 and was enduring unpleasant symptoms as a result.

compassionate release. (See ECF No. 681.) For the following reasons, the court will deny all three motions.

I. **Background**

On March 12, 2018, defendant pleaded guilty to possession with intent to distribute 500 grams or more of a substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1). (See ECF No. 481.) On July 11, 2018, this court sentenced defendant to 97 months of incarceration. (ECF No. 429.) As of February 2022, defendant has served approximately 56 months of his sentence. Defendant is currently incarcerated at FCI Elkton in Lisbon, Ohio. As of February 9, 2022, there were 12 cases of COVID-19 among the inmate population and 28 cases among the staff. COVID-19 Coronavirus, Bureau of Prisons.[2]

Defendant is 37 years old. He claims, and the government essentially concedes, that he suffers from hypertension, severe obesity, and gastroesophageal reflux disease, and was a chronic smoker. (See ECF No. 678.) The government asserts, and defendant does not deny,[3] that defendant is fully vaccinated.[4]

---

[2] Available at https://www.bop.gov/coronavirus/.

[3] Defendant did not file a reply brief; instead, he asked the court to appoint counsel to do so for him.

[4] It is possible that defendant is not "up to date" (has not received a booster), but because he has received his "primary series of COVID-19 vaccines," he is "fully vaccinated"

2

He received his first dose (Moderna) on March 4, 2021, and his second dose on March 30, 2021. Also, defendant states that he was experiencing a COVID-19 infection when he filed his motion.

## II. Analysis

The First Step Act empowers criminal defendants to ask courts to grant them compassionate release pursuant to 18 U.S.C § 3582(c). But before they make such requests to the courts, defendants must first ask BOP via the administrative process and give BOP thirty days to respond. See id. § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after either BOP denies the request or thirty days has elapsed since the request was filed), a court "may reduce the term of imprisonment." Id. § 3582(c)(1)(A)(i). Here, the court will assume without finding that defendant has exhausted his administrative remedies.[5]

Three considerations guide district courts in determining whether relief is permissible, and if so, deciding whether it is warranted, under § 3582(c)(1)(A):

---

regardless of whether he has received a booster. Stay Up to Date with Your Vaccines, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/stay-up-to-date.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fvaccines%2Ffully-vaccinated.html.

[5] This exhaustion requirement is non-jurisdictional. United States v. Muhammad, 16 F.4th 126, 129 (4th Cir. 2021). In its opposition, the government states in a footnote that it will explain how defendant has not exhausted his administrative remedies, but then fails to so explain.

> First, the court determines whether extraordinary and compelling reasons support a sentence reduction. District courts are entitled to make their own independent determinations of what constitutes an extraordinary and compelling reason under § 3582(c)(1)(A) and are thus empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Second, the court considers whether granting a sentence reduction is consistent with applicable policy statements issued by the [United States] Sentencing Commission. Although there are no applicable policy statements that govern a defendant's motion for compassionate release, the policy statement at U.S. Sentencing Guidelines Manual § 1B1.13—which applies to compassionate release motions filed by the Bureau of Prisons—remains helpful guidance even when motions are filed by defendants. Third, the court must consider any applicable 18 U.S.C. § 3553(a) sentencing factors before deciding whether to exercise its discretion to reduce the defendant's sentence.

United States v. Colleton, No. 21-6015, 2022 WL 18500, at *1 (4th Cir. Jan. 3, 2022) (citations and internal quotation marks omitted).

Because there is no binding policy statement in this context, the second consideration—consistency with applicable Sentencing Commission policy statements—is not an independent prong of the analysis. See United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020). But the second consideration does not fall away completely because it is appropriate for district courts to consider § 1B1.13 of the Federal Sentencing Guidelines "in defining what should be considered an 'extraordinary and compelling circumstance' warranting a sentence reduction." United States v. Jenkins, 22 F.4th 162, 169 (4th Cir. 2021). In

4

other words, § 1B1.13 is folded into the first prong of the analysis as a non-binding definitional aid.  Id. at 169–70 ("Thus, the district court may consider any extraordinary and compelling reasons raised by the defendant as well as review § 1B1.13 to determine whether there is a sufficient 'extraordinary and compelling circumstance' warranting a sentence reduction."); see also United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("So while U.S.S.G. § 1B1.13 is not applicable to *defendant-filed* motions under § 3582(c), it defines, in the medical context, the same substantive term that applies to BOP-filed motions.  One might reasonably believe therefore that the term "extraordinary and compelling reasons" will be defined the same for *defendant-filed* motions.").[6]

---

[6] Comment 1(A) to U.S.S.G. § 1B1.13 states as follows:

> 1. Extraordinary and Compelling Reasons.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—

Ultimately, then, the compassionate release analysis for a defendant-filed motion requires determining (1) whether there exist extraordinary and compelling reasons to make discretionary relief permissible, and (2) (if so) whether the sentencing factors in § 3553(a) counsel in favor of such relief. See High, 997 F.3d at 186. The court now turns to those two prongs, mindful that it is defendant's burden to establish his entitlement to relief. See United States v. Edwards, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020). The court is also mindful that compassionate release is "an extraordinary and rare event." United States v. Mangarella, 3:06-cr-151-FDW-DCK-3, 2020 WL 1291835, *2-3 (W.D.N.C. Mar. 16, 2020).

Defendant's motion fails on both prongs. On the first prong, defendant has not established extraordinary and compelling reasons for a sentence reduction because his alleged underlying conditions, when viewed in light of his status (1) as fully vaccinated (and possibly up to date), (2) as having

---

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

6

presumably fully recovered from a previous COVID-19 infection, and (3) as an inmate at a facility with only a modest number of cases, do not show that he has a particularized susceptibility to a severe COVID-19 infection and a particularized risk of such infection. On the second prong, the court is far from convinced that the sentencing factors, as applied to present circumstances, counsel in favor of granting any sentence reduction. The present sentence remains sufficient but not greater than necessary to fulfill the purposes of sentencing.

    a.   **Extraordinary and Compelling Reasons**

The United States Court of Appeals for the Fourth Circuit has recognized that "arguments for release from prison based on the coronavirus pandemic depend at least on allegations that the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and that the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19." High, 997 F.3d at 185. In determining whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, courts have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility. See United States v. Brady, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May, 15, 2020) (citing and gathering

cases). Thus, compassionate release motions amid the COVID-19 pandemic require a "fact-intensive" inquiry. See United States v. Shakur, No. 82 CR 312 (CSH), 2020 WL 1911224, at *1 (S.D.N.Y. Apr. 20, 2020).

**1. Medical Conditions and Severe COVID-19 Susceptibility**

Defendant argues that his hypertension, severe obesity, history as a smoker (of twenty years), and "Gerds" (presumably gastroesophageal reflux disease) place him at severe risk of contracting a severe case of COVID-19 in light of the BOP's alleged inability to protect inmates from the virus.[7] (See ECF No. 699, at 4, 7, 20-21.) He also argues that his COVID-positive status at the time of the filing of this motion supports his position.

Defendant's most significant alleged underlying medical condition is his obesity. Defendant asserts that he has a body mass index ("BMI") of over 40, which the CDC categorizes as "severe" obesity, and which places him at increased risk for a severe or fatal case of COVID-19. People with Certain Medical

---

[7] In one section, defendant limits his conditions to hypertension and "Gerds." In other sections, he says that his conditions are hypertension, severe obesity, and a history of smoking. The court will assume without finding that defendant has hypertension, severe obesity, and gastroesophageal reflux disease, and that he smoked for twenty years.

Conditions, Ctrs. for Disease Control & Prevention.[8] According to the CDC:

> Overweight (defined as a body mass index (BMI) ≥ 25 kg/m2 but < 30 kg/m2), obesity (BMI ≥ 30 kg/m2 but < 40 kg/m2), or severe obesity (BMI of ≥ 40 kg/m2), <u>can</u> make you more likely to get severely ill from COVID-19.  The risk of severe COVID-19 illness <u>increases sharply with elevated BMI</u>.

Id. (emphasis added).

It is significant that defendant alleges not just obesity, but severe obesity.  The CDC recognizes that not all obesity is the same when it comes to COVID-19 outcomes, stating that "[t]he risk of severe COVID-19 illness increases sharply with elevated BMI."  Id.  The findings of a recent CDC report "highlight[ed] a dose-response relationship between higher BMI and severe COVID-19-associated illness and underscore the need for progressively intensive illness management as obesity severity increases."  Kompaniyets L, Goodman AB, Belay B, et al. <u>Body Mass Index and Risk for COVID-19-Related Hospitalization, Intensive Care Unit Admission, Invasive Mechanical Ventilation, and Death — United States, March-December 2020</u>.[9]

---

[8] Available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

[9] Available at https://www.cdc.gov/mmwr/volumes/70/wr/mm7010e4.htm#suggestedcitation.

9

Defendant's hypertension and history of smoking are concerning, but not to as great an extent. Defendant's hypertension is "possibly" a condition that increases the risk of a severe infection. People with Certain Medical Conditions, Ctrs. for Disease Control & Prevention.[10] As to being a former smoker, the CDC says, "Being a current or former cigarette smoker can make you more likely to get severely ill from COVID-19. If you currently smoke, quit. If you used to smoke, don't start again. If you've never smoked, don't start." Id. Defendant's gastroesophageal reflux disease is of the least concern because it is not on the CDC's list of conditions making a severe case of COVID-19 more likely.

Moreover, now that defendant has (presumably) fully recovered from a bout of COVID-19 and is fully vaccinated, his risk profile for a severe COVID-19 infection has been dramatically altered for the better. According to the CDC, defendant's vaccinations make him far less likely to become infected: "COVID-19 vaccines are effective at preventing infection, serious illness, and death. Most people who get COVID-19 are unvaccinated." The Possibility of COVID-19 after Vaccination: Breakthrough Infections, Ctrs. for Disease Control

---

[10] Available at https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-care/underlyingconditions.html.

& Prevention.[11] And even if defendant does get infected, the CDC says that he is far less likely to experience severe complications: "Fully vaccinated people with a vaccine breakthrough infection are less likely to develop serious illness than those who are unvaccinated and get COVID-19." Id.

The extraordinary circumstances analysis surrounding COVID-19 develops as the COVID-19 situation does, and the widespread availability of effective COVID-19 vaccines for federal inmates is a very significant development. See United States v. Kibble, 992 F.3d 326, 336 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021) (Quattlebaum, J., concurring) ("The pace of vaccinations for COVID-19—including in prisons—is accelerating. For that and other reasons, the COVID-19 pandemic continues to evolve, seemingly improving but surely changing. Even so, we may still have occasion to grapple with the meaning of 'extraordinary and compelling reasons.'"). The Fourth Circuit has yet to squarely confront the argument for "a per se rule that would always preclude a finding of extraordinary and compelling reasons when the movant has been vaccinated." See United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022)

---

[11] Available at https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/why-measure-effectiveness/breakthrough-cases.html.

11

(declining to resolve the issue because it was not raised below).

It appears that the Sixth and Seventh Circuits have adopted something close to such a per se rule. See United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("Lemons's access to the COVID-19 vaccine substantially undermines his request for a sentence reduction. To that end, we agree with the Seventh Circuit that a defendant's incarceration during the COVID-19 pandemic—when the defendant has access to the COVID-19 vaccine—does not present an 'extraordinary and compelling reason' warranting a sentence reduction.").

Even without such a per se rule, however, persuasive authority suggests that proving a particularized susceptibility to a severe case of COVID-19 in a post-vaccination world requires significantly more than it did in a pre-vaccination world. See United States v. Tatum, No. 3:19CR146 (DJN), 2022 WL 287695, at *4 (E.D. Va. Jan. 31, 2022) ("Courts have concluded that, because vaccination mitigates the risk of contracting COVID-19 and, in the case of breakthrough infections, protects against serious illness, vaccination weighs against a request for compassionate release.); United States v. Evans, No. 4:04-CR-00140-TLW, 2022 WL 286190, at *3 (D.S.C. Jan. 31, 2022); United States v. Daniels, No. 1:03-CR-00083-MR, 2022 WL 256320, at *2 (W.D.N.C. Jan. 26, 2022) ("While the Defendant still faces

12

some risk of infection, the fact that the Defendant faces a slight risk of contracting the virus while incarcerated, without more, is not sufficient to justify the relief he requests."); United States v. Smith, No. 3:15CR101, 2021 WL 3641463, at *3 (E.D. Va. Aug. 17, 2021) ("Further, because the vaccine mitigates the risk of contracting COVID-19, the defendant must provide other evidence to establish an extraordinary and compelling reason for compassionate release based upon his concern about contracting the virus.").

A defendant's having contracted and recovered from COVID-19 also makes a COVID-19-based claim of extraordinary and compelling reasons less compelling. See United States v. Murry, 538 F. Supp. 3d 615, 618 (E.D. Va. 2021) ("Moreover, the Defendant has already tested positive for the virus and recovered without any serious complications, which undercuts the argument that he is particularly susceptible to extreme illness or death from COVID-19, as well as his assertion that the BOP would be ineffective in managing his illness in the off-chance he contracts COVID-19 again.").

Defendant has some significant underlying health conditions that are concerning. In fact, before the widespread availability[12] of effective COVID-19 vaccines, this court assumed

---

[12] It is the availability of the vaccine, not the fact that an individual defendant actually received it, that matters. See

13

without deciding that his conditions, coupled with the outbreak level at FCI Elkton, amounted to extraordinary and compelling reasons making relief permissible. (ECF No. 681, at 4.)

That was in 2020. The vaccine has now profoundly changed the analysis. Vaccine availability is at once very helpful to inmates seeking to avoid severe COVID-19 infections and very unhelpful to inmates' arguments for compassionate release based on COVID-19 susceptibility. The court acknowledges that cases may arise or the COVID-19 landscape may change such that a defendant may still show extraordinary and compelling reasons based on COVID-19 susceptibility. Having considered the totality of the circumstances here, however, the court finds that this case is not one of them. Defendant has not shown that his medical conditions result in a particularized susceptibility to a severe COVID-19 infection and a particularized risk of such

---

Lemons, 15 F.4th at 751. Thus, the analysis is the same for the vast majority of inmates regardless of whether they have received or refused the vaccine. There are likely some individuals, however, to whom the vaccine remains "unavailable" because of an immune system compromise, for example. See United States v. Clayton, No. 3:07CR488-01, 2021 WL 2689838, at *2 (E.D. Va. June 30, 2021) ("[W]here, as here, the defendant is taking medications that compromise his immune system, and the risks and benefits to people in that condition are simply unknown, the analysis of what force to give to an applicant's refusal to take the vaccine changes."). In those cases, the analysis may change. Id.

infection such as to amount to extraordinary and compelling reasons for compassionate release.

### 2. Rehabilitative Efforts

Defendant argues that his rehabilitative efforts also support a finding of extraordinary and compelling reasons. Defendant cites his employment, education, personal growth, remorse, mentorship activities, lack of disciplinary history, and overall efforts toward self-improvement. In sum, he alleges, "[h]is performance in prison has been extraordinary." (ECF No. 699, at 23.) He says that he takes full responsibility for his behavior. In light of all this, he concludes that his sentence was a "gross injustice." (ECF No. 699, at 24.)

The court will consider these asserted grounds individually and collectively with the other asserted grounds. The court assumes the truth of defendant's assertions regarding his behavior in prison. These rehabilitative efforts are commendable, and they should serve defendant well while when he reenters society. They do not, however, result in the existence of extraordinary and compelling reasons. By themselves, they are insufficient as a matter of law. United States v. Brown, No. 3:90CR113, 2021 WL 3206548, at *2 (E.D. Va. July 29, 2021), aff'd, No. 21-7136, 2022 WL 313777 (4th Cir. Feb. 2, 2022) (citing 28 U.S.C. § 994(t)). And even when added to defendant's other asserted grounds for relief, the sum total is one from

15

which the court cannot discern extraordinary and compelling reasons for relief.

### 3. Assertions of Sentencing Error

Defendant's third and fourth grounds for relief do not help his cause. In his third asserted ground, defendant contests the sentence he received as erroneous. He argues that he received improper sentencing enhancements and challenges the "jurisdiction" of this court's Probation Office to produce a presentence investigation report. (Id.) The court has considered and rejected these arguments.

In his fourth asserted ground, defendant argues that his sentence was excessive. He cites a case from the Eastern District of California which he says involved similar offense conduct and a shorter sentence of imprisonment. Even if that is true, this argument does not avail defendant. This court had an obligation to impose a sufficient but not greater than necessary sentence and did so. That another court may have exercised its sentencing discretion differently, even on purportedly similar facts, is far from extraordinary and compelling. Defendant also says that his mandatory minimum sentence was reduced to sixty months as a result of the First Step Act. He does not explain how this change has resulted in a sentence that was more than necessary to achieve the ends of justice. The court cannot discern merit in this undeveloped argument and rejects it.

**b. Section 3553(a) Sentencing Factors**

Even if the court were to conclude that defendant has presented an extraordinary and compelling reasons for release, the factors set forth in 18 U.S.C. § 3553(a) counsel against granting the discretionary relief that would then be permissible. These factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (v) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a). Having reviewed the sentencing factors as they apply to defendant afresh, the court finds that granting defendant's motion for compassionate release would be inconsistent with them.

Defendant is serving a sentence of imprisonment for participating in a large-scale drug trafficking organization

17

that was distributing large quantities of controlled substances within this district. Defendant admitted to possessing with the intent to distribute over 1,500 grams of cocaine and to possessing over $90,000 in cash that represented proceeds of drug trafficking activity. At the time of his arrest, and during the execution of a search warrant, defendant also possessed 8 firearms, at least 1 of which had previously been stolen, and 7 of which were loaded.

Early release would be inconsistent with protecting the public from further crimes by this defendant. This is so despite defendant's rehabilitative efforts because, given the extent of defendant's involvement in the drug trade, a sufficient period of incapacity is necessary. Early release would also be inconsistent with the severity of defendant's offense and the interest in providing just punishment for that serious offense and deterring others from similar conduct. Through his drug dealing, defendant raked in a large personal profit at very significant expense to the community, whose members have suffered the grave consequences of the proliferation of drugs with which he assisted. What is more, he appears to have had the advantages of a good childhood, and he attended college for multiple years, making his choice to enter the drug trade particularly inexcusable.

In sum, this court finds that granting defendant's motion for compassionate release would be inconsistent with the sentencing factors set forth in § 3553(a). The need to protect the public, promote respect for the law, provide just punishment, deter others from similar conduct, and ensure that defendant receives sufficient educational and vocational training, substantially outweigh the arguments that defendant has made for his early release. Given the nature and circumstances of the offense and defendant's history and characteristics, a sentence of 97 months of imprisonment remains appropriate to achieve the goals of sentencing, and a reduction of the magnitude that defendant seeks would run counter to those objectives.

### III. Conclusion

Having considered the entire record in this matter, including the parties' filings related to the instant motion, the court concludes that defendant has not presented extraordinary and compelling reasons that would justify his release. Furthermore, even if such extraordinary and compelling circumstances were present, a sentence reduction would not serve the sentencing objectives of 18 U.S.C. § 3553(a). Therefore, the court **DENIES** defendant's motion for compassionate release (ECF No. 699). The court also **DENIES** defendant's request for appointment of counsel (ECF No. 705) as moot and **DENIES**

defendant's request for reconsideration (ECF No. 706) as duplicative of his renewed motion.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

**IT IS SO ORDERED** this 14th day of February, 2022.

ENTER:

David A. Faber
Senior United States District Judge